# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2374

_____

David Petersen,                                    *
                                                   *
            Appellee,                              *
                                                   *    Appeal from the United States
       v.                                          *    District Court for the
                                                   *    District of Nebraska.
Michael J. Astrue, Commissioner of                 *
Social Security,                                   *
                                                   *
            Appellant.                             *

_____

Submitted: March 11, 2010
Filed: February 3, 2011

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

The Commissioner of Social Security appeals the district court's[1] judgment reversing the Commissioner's decision to apply the Windfall Elimination Provision to David Petersen's old-age social security benefits. As we agree with the district court's well-reasoned decision, we affirm.

_____

[1]The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

I.

A.

As this case intimately involves the Windfall Elimination Provision (WEP), we begin with a brief description of that provision. The WEP was enacted in 1983 to eliminate the unintended benefits windfall that occurs when workers who split their career between covered employment (required to pay Social Security taxes) and non-covered employment (exempt from Social Security taxes). 42 U.S.C. § 415. This non-covered employment is often federal employment that, prior to 1984, was exempt from Social Security taxes because federal employees contributed to the federal civil service pension which was "designed to take the place both of social security and a private pension plan for workers who remain in [federal] employment throughout their careers." See H.R. Rep. No. 98-25, at 22 (1983), reprinted in 1983 U.S.C.C.A.N. 219, 240. Prior to the passage of the WEP, in calculating a beneficiary's primary insurance amount from the beneficiary's average monthly earnings, the Social Security Administration (SSA) did not consider whether the earnings came from covered or non-covered employment. As a result, beneficiaries that had a split career received both full Social Security benefits and whatever pension benefits were provided by the non-covered employment. The WEP requires a calculation of the Social Security benefit under a modified formula to account for the civil service pension benefits.

The WEP is not without statutory exceptions, however. One of those exceptions is at the heart of this case. The WEP's modified formula is not used if the claimant is receiving "a monthly periodic payment . . . based wholly on service as a member of a uniformed service (as defined in [42 U.S.C. § 410(m)])." 42 U.S.C. § 415(a)(7)(A). Under section 410(m), a "member of a uniformed service" includes, among others, "any person appointed, enlisted, or inducted in a component of the . . . Air Force . . . (including a reserve component as defined in [38 U.S.C.

§ 101(27)]).” 42 U.S.C. § 410(m). The Air National Guard of the United States is a reserve component of the Air Force. 38 U.S.C. § 101(27)(G).

B.

Between 1972 and 2000, Petersen worked for the Nebraska Air National Guard as a National Guard technician. Under the National Guard Technicians Act of 1968, employees such as Petersen were deemed “dual status” federal employees, a hybrid civilian and military position. 10 U.S.C. § 10216(a). Although Petersen was paid by the hour similar to normal civil servants, he was required to be a member of the Nebraska Air National Guard, to participate in weekend and summer military training and drills, to wear military uniform while on the job, and to maintain military physical standards. In October 2000, Petersen retired from his National Guard technician’s position and began drawing a civil pension based on his service. Part of the pension was paid by the Office of Personnel Management (OPM), the civilian component of the federal government. In April 2006, Petersen sought old-age retirement benefits from the SSA. Although he received an award of benefits, the SSA reduced those benefits under the WEP.

C.

On initial consideration and reconsideration, the SSA determined that Petersen’s benefits were subject to WEP’s modified formula. At Petersen’s request, this decision was reviewed by an Administrative Law Judge (ALJ). The ALJ reversed the decision, holding that a prior decision from the United States District Court for the Western District of Missouri held that National Guard technicians were on full-time military duty when performing their jobs. The ALJ found, therefore, that the pension Petersen received for his National Guard technician work was excepted from the WEP. On its own motion, the Social Security Appeals Council initiated review of the ALJ’s decision and reversed, holding that the exception to the WEP did not apply to Petersen.

Petersen sought review by the district court. The district court recognized that the "sole issue raised by the parties is whether [Petersen's] OPM pension is 'a payment based wholly on service as a member of a uniformed service.'" The district court held that Petersen's pension was payment based on "service as a member of a uniformed service" and thus subject to the WEP exception.[2]

Undeterred, the SSA sought an order to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), arguing that the district court's decision that Petersen was a member of a uniformed service was inconsistent with the fact that military technicians had civilian status. In a thorough and well-reasoned decision, the district court rejected this argument and held that the WEP exception lacks any reference to the person's "status" and only requires that the pension payments be based "wholly on service" as a member of the uniformed services.

---

[2]In its initial decision, the district court quoted the following from the ALJ's determination:

> The evidence shows that, while working as a National Guard technician, the Claimant was required to be a member of the Nebraska Air National Guard; was required to wear a National Guard uniform appropriate for his grade and component of the Armed Forces on a daily basis; was subject to military supervision and *discipline, including courts-martial*; was required to maintain military physical fitness qualifications; and would lose his job if he failed to meet any of the above military requirements.

(District Ct. Order 3, Feb. 23, 2009 (emphasis added).) We note, however, that National Guard technicians such as Petersen would not have been subjected to the Uniform Code of Military Justice unless he was "in Federal service." See 10 U.S.C. § 802(a)(3); see also Walch v. Adjutant General's Dep't of Tex., 533 F.3d 289, 296-97 (5th Cir. 2008) ("As civilians, these technicians are not while in that status subject to military discipline such as under the Uniform Code of Military Justice.").

In this appeal, the SSA raises the following arguments: (1) the SSA's interpretation of the statute is entitled to deference should the statute be deemed to be ambiguous; (2) under the plain language of the statute, Petersen's work as a National Guard Technician was not "service as a member of a uniformed service;" and (3) the legislative history supports the conclusion that Congress intended, in enacting the uniformed services exception, to eliminate the differential treatment of individuals on inactive duty training status between 1956 and 1988.

## II.

### A.

We have appellate jurisdiction to consider this appeal under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. As we are charged with deciding a question of statutory interpretation, our review of the district court's order and the SSA decision is de novo. See Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).

We have indicated previously that "appropriate deference" should be given to the SSA's interpretation of the Social Security Act. See Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992). Deference is appropriate where "Congress has, either explicitly or implicitly, left a gap in a statute to be filled by a particular agency." TeamBank, N.A. v. McClure, 279 F.3d 614, 618 (2002) (citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984)). However, we find, as explained below, that the meaning and intent of section 415(a)(7)(A) is clear and unambiguous, therefore it is unnecessary for us to defer to the SSA's interpretation of the statute. See Chevron, 467 U.S. at 842-43 ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

B.

Under 32 U.S.C. § 709, the statute that codified the National Guard Technician Act of 1968, National Guard technicians were given "dual status" roles, defined as

> Federal civilian employee[s] who . . . [are] required as a condition of that employment to maintain membership in the Selected Reserve; and [are] assigned to a civilian position as a technician in the organizing, administering, instructing, or training of the Selected Reserve or in the maintenance and repair of supplies or equipment issued to the Selected Reserve or the armed forces.

10 U.S.C. § 10216(a)(1)(B)-(C). To maintain employment, National Guard technicians are required to maintain their membership in the National Guard, to "[h]old the military grade specified by the Secretary concerned for that position," and, while performing the work of a National Guard technician, to "wear the uniform appropriate for the member's grade and component of the armed forces." 32 U.S.C. § 709(b).

The SSA argues that, despite the various military requirements imposed upon National Guard technicians, the fact that they are defined as "Federal civilian employee[s]" necessarily means that their work was "by" a member of the uniformed service and not "as" a member of the uniformed service. The SSA argues that, under the plain language of the statute, "service as a member of a uniformed service" is limited "to military duties performed while acting in one's capacity as a member of the National Guard." Such duties would include, according to the SSA, required military training such as weekend drills "and other kinds of military duty, whether on active duty or some other military duty status." Accordingly, under the SSA's argument, the fact that Petersen was in a "dual status" role, his work was civilian and thus was performed "by" a member of a uniformed service and not "as" a member of a uniformed service.

We do not agree with the SSA's approach that because Petersen was a "dual status" employee, his work as a National Guard technician was not work performed "as a member of the uniformed services." "As with any question of statutory interpretation, our analysis begins with the plain language of the statute." Jimenez v. Quarterman, 129 S. Ct. 681, 685 (2009). Under the WEP's exception, if Petersen is receiving a pension that is "based wholly on service as a member of a uniformed service (as defined in [42 U.S.C. § 410(m)])," 42 U.S.C. § 415(a)(7)(A), that person's social security benefit is not subject to WEP's modified formula. Section 415(a)(7)(A) only requires that the service be as a member of the uniformed service. Petersen's pension meets the limited requirements of the statute. Neither party disputes that the Nebraska Air National Guard is a "uniformed service" or that the pension Petersen is receiving is based entirely on his service as a National Guard technician. Nor is it disputed that when he was working as a National Guard technician, Petersen was required to maintain his membership in the National Guard and the military grade for his position, 32 U.S.C. § 709(f)(1)(A), and was required by statute to "wear the uniform appropriate for [his] grade and component of the armed forces" while on duty, 32 U.S.C. § 709(b)(4). Due to these unique National Guard technician requirements imposed upon him, we agree with the district court that Petersen performed his work "as a member of" the Nebraska Air National Guard.

As the district court noted, absent from the WEP exception is a requirement that the "service" be only in a non-civilian or military duty capacity. Rather, the plain language of the statute makes it abundantly clear that the exception applies to all service performed as a member of a uniformed service. The SSA's request that this court read a "military duty" requirement into the statute is rejected. While this outcome may result in Petersen and others receiving a windfall in retirement benefits, the solution is in a change to the WEP, not in a distorted reading of the current statute.

We decline to address the SSA's arguments regarding Congressional intent or legislative history because there is no ambiguity in the WEP exception. See United States v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) ("If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." (quoting United States v. S.A., 129 F.3d 995, 998 (8th Cir. 1997))).

## III.

Accordingly, we affirm the district court's judgment reversing the decision of the Commissioner of Social Security.

_____