**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 7 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WILLIAM ESTUARDO VALDEZ,

Plaintiff - Appellant,

v.

LELAND DUDEK, Acting Commissioner
of Social Security,

Defendant - Appellee.

No. 23-3880

D.C. No.
2:20-cv-11256-HDV-AGR

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Hernan Diego Vera, District Judge, Presiding

Submitted December 4, 2024[**]
Pasadena, California

Before: OWENS, LEE, and KOH, Circuit Judges.

William Estuardo Valdez appeals from a district court order affirming the

Administrative Law Judge's (ALJ) denial of his applications for disability income

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

benefits and supplemental security income benefits.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review the district court's order upholding the ALJ's denial of social security benefits de novo.  *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020).  We reverse the ALJ's decision only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard."  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (internal citation and quotation omitted).  "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

1.    The ALJ did not err by discounting Valdez's testimony regarding his subjective pain and symptoms.  An ALJ can discount a claimant's testimony about the severity of his or her symptoms only by offering "specific, clear and convincing reasons for doing so."  *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (internal citation and quotation omitted).  Furthermore, the ALJ's "specific, clear and convincing reasons" must be supported by "substantial evidence."  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  Here, the ALJ cited at least two clear and convincing reasons supported by substantial evidence for discounting Valdez's testimony.

First, the ALJ found that Valdez's testimony was not consistent with the objective medical evidence. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Here, the ALJ found that the objective medical evidence was inconsistent with "the level of severity alleged in [Valdez's] written statements and his testimony at the hearing." In support of this finding, the ALJ recounted, among other things, a 2018 physical examination that noted Valdez displayed full range of motion of his neck and no tenderness to palpation in his lumbar or cervical spine; imaging that ranged from normal to mild findings over a period of time; and a 2017 functional assessment that noted Valdez was able to "sit, stand, walk, eat, bathe, crouch, stoop, kneel, crawl, climb, and write independently." Additionally, the ALJ noted that in July 2013, shortly after his injury, Valdez "displayed lower extremity weakness, tenderness and spasms of the thoracolumbar spine, restricted range of motion of the back, and positive straight leg raising tests bilaterally," but that "his gait was normal, and he exhibited intact sensation." Taken together, this objective medical evidence was a specific, clear and convincing reason to discount Valdez's testimony.

Second, the ALJ found that Valdez's testimony was not consistent with the "conservative" medical treatment that Valdez received. "[E]vidence of

'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted).

Here, the record shows that shortly after Valdez's injury, his physician recommended a "trial of conservative [treatment]," which included chiropractic care, pain medication, a back brace, heating pad, and cold pack. This explicit reference to "conservative" treatment suggests that more aggressive options were available but not prescribed and thus supports the ALJ's finding. Additionally, the record indicates that Valdez never received a sacroiliac joint injection (SI) even though such an injection can be appropriate for the type of symptoms Valdez reported. Indeed, one was approved shortly after his injury, but Valdez failed to schedule it. It does not appear he received it at a future date or that it was ever prescribed again. Thus, the ALJ's finding that Valdez received relatively conservative treatment was a "specific, clear and convincing" reason for rejecting Valdez's testimony.

2. <u>The ALJ did not err by giving "no weight" to Dr. Perdikis's opinion regarding Valdez's physical limitations.</u> If a treating physician's opinion is contradicted by another doctor, the ALJ may reject the opinion only by providing "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017) (internal citation and quotation

omitted). Here, the ALJ gave "no weight" to the medical opinion of treating physician Dr. Perdikis. In support of its decision to give no weight to the opinion, the ALJ provided at least two specific and legitimate reasons supported by substantial evidence.

First, the ALJ found Dr. Aaron Coppelson's medical notes from shortly after Valdez's injury, which indicated Valdez could return to work, contradicted Dr. Perdikis's opinion. Approximately three months after Valdez's injury, Valdez saw Dr. Coppelson, a U.S. Health Works Medical Group doctor he had seen at least two times previously. Dr. Coppelson's treatment notes from that visit note that although an SI had been approved, Valdez failed to schedule an appointment to get it. Dr. Coppelson told Valdez he thought it was "remarkable" that he "could be in [as] much pain as he described but not bother[] even making one phone call." Valdez told Dr. Coppelson he had been waiting for the office to call him to schedule the injection. The treatment notes state Dr. Coppelson believed he had "bent over backwards" for Valdez despite "negative diagnostic studies," and that he had given Valdez "the benefit of the doubt" in "maintain[ing] him essentially off work." The treatment notes then state Valdez is to "return to his regular job duties immediately."

Valdez argues that although the ALJ found "the treatment records from U.S. Health Works Medical Group conflict with the opinion from Dr. Perdikis," the ALJ failed to explain "what evidence in these records allegedly contradicts Dr. Perdikis's

opinions." Although the exhibit cited by the ALJ is rather large and contained multiple records from U.S. Health Works Medical Group, the ALJ discussed the opinion of Dr. Coppelson one page earlier in its decision, including his recommendation that Valdez return to his regular job duties immediately. In other words, there is no reason believe that the ALJ's reference to "claimant's treatment notes from U.S. Health Works Medical Group shortly after his injury and alleged onset date," would mean anything other than—or at least not include—Dr. Coppelson's notes as described earlier in its decision. Thus, Dr. Coppelson's statement that Valdez could return to his regular job duties immediately was a specific and legitimate reason to discount Dr. Perdikis's opinion.

Second, the ALJ found Dr. Perdikis's opinion was contradicted by the "conservative" medical treatment Valdez received. For the same reasons set forth above, the conservative treatment Valdez received is a specific and legitimate reason to discount Dr. Perdikis's opinion.

**AFFIRMED.**