**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEVEN T. AHEARN,<br>   *Plaintiff-Appellant*,<br><br>    v.<br><br>ANDREW M. SAUL,<br>Commissioner of Social<br>Security,<br>   *Defendant-Appellee.* | No. 19-35774<br><br>D.C. No.<br>3:18-cv-05699-MLP<br><br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Michelle L. Peterson, Magistrate Judge, Presiding

Submitted October 6, 2020[*]
Seattle, Washington

Filed February 17, 2021

Before: Susan P. Graber and William A. Fletcher, Circuit
Judges, and Nancy D. Freudenthal,[**] District Judge.

Opinion by Judge W. Fletcher

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Nancy D. Freudenthal, United States District Judge
for the District of Wyoming, sitting by designation.

## SUMMARY[***]

### Social Security

The panel affirmed the district court's judgment affirming the administrative law judge's denial of claimant's application for Supplemental Security Income ("SSI") under the Social Security Act.

The panel rejected the government's description of the standard of review for Social Security cases. Citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478 (1992), an immigration case, the government asserted that a reviewing court could set aside an ALJ's conclusion in an SSI case only if the record compelled a contrary conclusion. The panel held that *Elias-Zacarias* did not describe the standard of review in an SSI case.

The panel held that in an SSI case, the court reviews the decision of the ALJ for substantial evidence. If substantial evidence in the record supports the ALJ's decision, the court must defer to the ALJ. In the absence of substantial evidence, however, the court must set aside the ALJ's decision. The court is not restricted to setting aside the ALJ's decision only when the evidence in the record compelled a contrary conclusion.

Considering the record as a whole, the panel held that the ALJ's disability determination was supported by substantial evidence.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Eitan Kassel Yanich, Law Office of Eitan Kassel Yanich PLLC, Olympia, Washington, for Plaintiff-Appellant.

Matthew W. Pile, Acting Regional Chief Counsel, Seattle Region X; Katherine Watson, Assistant Regional Counsel; Kerry Jane Keefe, Assistant United States Attorney; Social Security Administration, Office of the General Counsel, Seattle, Washington; for Defendant-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Claimant Steven Ahearn seeks disability benefits under the federal Supplemental Security Income ("SSI") program. The Administrative Law Judge ("ALJ") denied benefits, and the district court affirmed. We affirm in turn.

There is nothing unusual about the substance of this appeal that merits a published opinion. We are publishing our decision to draw attention to the government's incorrect description, in its briefs in this and in other recent SSI cases, of the standard of review.

### I. Standard of Review

Citing *I.N.S. v. Elias-Zacarias*, 502 U.S. 478 (1992), an immigration case, the government insists that a reviewing court can set aside an ALJ's conclusion in an SSI case only if the record compels a contrary conclusion. In *Elias-Zacarias*, the Supreme Court wrote that a court of appeals can

reverse a decision of the Board of Immigration Appeals only if the evidence in the record "not only *supports* that conclusion, but *compels* it." *Id.* at 481 n.1 (emphasis in original). This passage from *Elias-Zacarias* does not describe the standard of review in an SSI case.

Congress adopted that standard of review for immigration cases in 1996. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, sec. 306, § 242(b)(4)(B), 110 Stat. 3009-546, 3009-608. Since then, 8 U.S.C. § 1252(b)(4)(B) has provided that the administrative agency's findings in an immigration case "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." For social security cases, Congress adopted a different standard: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "[T]he use of different language by Congress creates a presumption that it intended the terms to have different meanings." *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996).

In an SSI case, we review the decision of the ALJ for substantial evidence. If substantial evidence in the record supports the ALJ's decision, we must defer to the ALJ. In the absence of substantial evidence, however, we must set aside the ALJ's decision. We are not restricted to setting aside the ALJ's decision only when the evidence in the record compels a contrary conclusion.

In a recent SSI case, the Supreme Court described the substantial evidence standard that applies in this context:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (citations omitted).

"[We] reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*. To determine whether substantial evidence supports the ALJ's determination, we must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). We may not reweigh the evidence or substitute our judgment for that of the ALJ. "The ALJ is responsible for

determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459.

We review the decision of the district court *de novo*. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). We must "independently determine whether the Commissioner's decision (1) is free of legal error and (2) is supported by substantial evidence." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

## II. Discussion

Ahearn applied for SSI in March 2013, alleging disability since October 1, 2010, when he was twenty-eight years old. The ALJ found that Ahearn was not disabled, and the decision became administratively final on December 16, 2014. Two months later, Ahearn filed a second application for SSI, again alleging disability since October 1, 2010.

In support of his second application, Ahearn submitted evidence of changed circumstances. The ALJ wrote that the evidence in the record, including the new evidence, did not rebut a *res judicata*-based presumption of non-disability. The ALJ then evaluated the evidence using the five-step process required in SSI cases. After step three, the ALJ determined Ahearn's residual functional capacity. Relying on that functional capacity, she found at step four that Ahearn could perform his past relevant work of janitor and home care attendant. She found at step five that Ahearn could also

perform other work in the national economy. The ALJ concluded that Ahearn was not disabled and denied benefits.

The district court affirmed after concluding (1) that the ALJ reasonably evaluated Ahearn's testimony and the medical evidence, and (2) that any error in the ALJ's presumption based on *res judicata* was harmless. Ahearn appealed.

### A. Ahearn's Testimony and the Medical Evidence

#### 1. Testimony

An ALJ engages in a two-step analysis to determine whether to credit a claimant's testimony regarding pain or symptoms. The ALJ first determines whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281. An ALJ is not required to "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quotation marks and citation omitted).

Ahearn testified that his depression, cognitive impairments, and other issues resulted in severe limitations

on his ability to work, including an inability to concentrate for a sustained period and to work fast enough to satisfy his employers. The ALJ concluded that Ahearn's limitations were not as severe as he claimed. She discounted Ahearn's testimony because, in her view, it was inconsistent with Ahern's medical record, his work history, and his daily activities.

Substantial evidence supports the ALJ's conclusion that the medical record was inconsistent with the severity of the limitations Ahearn described in his testimony. The ALJ cited information in Ahearn's medical record that provided specific, clear, and convincing reasons supporting a finding that Ahearn's limitations were not as severe as he claimed. The ALJ did not simply pick out a few isolated examples to show that his testimony was inconsistent with the record.

Further, Ahearn's work history provides substantial evidence to support the ALJ's decision. Ahearn testified that for much of his life he had issues with cognition, endurance, speed, depression, breathing, and sleeping. Yet the record shows that Ahearn was gainfully employed during his twenties. For example, he worked as a janitor and then as a home care attendant at Western State Hospital for nine months in 2002, and his employment was terminated due to funding issues rather than due to poor performance.

Finally, Ahearn's daily activities provide substantial evidence to support the ALJ's decision. Ahearn had the ability to play video games and watch television for sustained periods, to use a library computer a few times a week for two hours at a time (the maximum time permitted by the library), to use public transportation, to shop at stores, to perform

personal care, to prepare meals, to socialize with friends, and to perform household chores.

## 2. Medical Evidence

Ahearn objects that the ALJ erred in discounting the assessments of three examining psychologists, Drs. Bates, Ruddell, and Wingate.

Dr. Bates examined Ahearn in March 2007. His report was in the record when the first ALJ denied benefits. At the time of Dr. Bates's report, both of Ahearn's parents were alive but divorced. Ahearn had lived with his father since he was nine years old because of his mother's mental health issues. Dr. Bates diagnosed depression and borderline intellectual functioning. Among other things, Dr. Bates concluded that Ahearn "will have difficulty successfully performing activities and maintaining consistent attendance without considerable supervision." The ALJ gave Dr. Bates's assessment "minimal weight" because it was "remote" in time, but did adopt his finding of "borderline intellectual functioning" and "mild depressive disorder."

Dr. Ruddell examined Ahearn in March 2015. At the time of Dr. Ruddell's examination, Ahearn's father had died six years earlier, and his mother had died within the past month. Ahearn expected to be homeless if he could not stay with friends. Ahearn reported to Dr. Ruddell that he had "worked general labor" from 2001 to 2012, and had "no problems" with co-workers or supervisors. Dr. Ruddell noted that Ahearn was taking medication for depression and diagnosed "major depressive disorder" and "intellectual disorder." On the form, Dr. Ruddell checked no boxes for "severe" limitation, but checked several boxes for "marked"

limitation, including limitations in understanding, remembering, and persisting in tasks by following either simple or detailed instructions; learning new tasks; and adapting to changes in a routine work setting. The ALJ gave some weight to the findings of Dr. Ruddell, but gave no weight to the checked limitations "because they are entirely inconsistent with the claimant's ability to work given his cognitive disorder and borderline intellectual functioning." The ALJ noted that at an appointment three months later, Ahearn was assessed as "doing 'remarkably well' since the death of his mother." That later appointment, the ALJ noted, had not been for the "purpose of obtaining benefits."

Dr. Wingate examined Ahearn in January 2017. At the time of Dr. Wingate's report, Ahearn was homeless, alternating between a shelter and a tent in the woods. Dr. Wingate noted that Ahearn was taking medication for depression but that he "often" forgot to take it. Dr. Wingate diagnosed "major depressive disorder," "unspecified anxiety disorder," and "unspecified cognitive disorder." On the form, Dr. Wingate checked several boxes for "marked" limitations, including understanding, remembering and persisting in tasks by following detailed instructions; performing activities within a schedule; learning new tasks; and completing a normal work day. Although she checked no individual box for "severe" limitation, Dr. Wingate did so for the "overall severity based on the combined impact" of the diagnosed mental impairments. The ALJ gave "very little weight" to Dr. Wingate's assessment "because it was primarily based on past instances of exhibiting secondary gain," and because it was inconsistent with the assessments of treatment providers who "repeatedly" noted that Ahearn was "negative for symptoms of depression."

The ALJ did not err in giving limited weight to Dr. Bates's assessment. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).

Nor the did ALJ err in giving limited weight, and in some instances no weight, to the assessments of Drs. Ruddell and Wingate. The ALJ instead adopted the assessments of psychologists Drs. Kraft and Donahue, two non-examining state-agency consultants. After reviewing the medical evidence in the record up to 2015, including the assessments of Drs. Bates and Ruddell, Drs. Kraft and Donahue concluded that Ahearn could perform a range of simple, repetitive tasks consistent with the ALJ's determination of Ahearn's residual functional capacity. The ALJ did not err because, as she specifically noted, the assessments of Drs. Kraft and Donahue were "supported by other evidence in the record and [were] consistent with it." *Andrews*, 53 F.3d at 1041.

## B. *Res Judicata*

An ALJ's determination that a claimant is not disabled creates, for future applications by that same claimant, a "presumption that [the claimant] continued to be able to work after that date." *Lester*, 81 F.3d at 827 (alteration in original) (quotation marks and citation omitted). The presumption may be overcome with a showing of "changed circumstances." *Id.* The presumption does not apply if the claimant was not represented by counsel when the earlier claim for benefits was denied. *Id.* at 827–28.

Ahearn was not represented by counsel in connection with his first application for benefits. Therefore, to the extent that

the ALJ may have applied a presumption of non-disability, she erred.  However, as the district court concluded, the ALJ performed an independent evaluation of the evidence in the record, including the old evidence as well as the new evidence offered by Ahearn.  Any error was therefore harmless.

## Conclusion

Considering the record as a whole, we hold that the ALJ's disability determination was supported by substantial evidence.  We therefore affirm the decision of the district court.

**AFFIRMED.**