**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH E. SMITH,
                    *Plaintiff-Appellant*,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,
                    *Defendant-Appellee.*

No. 20-35487

D.C. No.
3:19-cv-05426-
JRC

OPINION

Appeal from the United States District Court
for the Western District of Washington
J. Richard Creatura, Chief Magistrate Judge, Presiding

Argued and Submitted September 3, 2021
Seattle, Washington

Filed October 1, 2021

Before: Michael Daly Hawkins and M. Margaret
McKeown, Circuit Judges, and Jed S. Rakoff,[*]
District Judge.

Opinion by Judge Rakoff

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

# SUMMARY[**]

## Social Security

The panel reversed the district court's affirmance of a 2019 decision of an administrative law judge ("ALJ") denying a claimant's application for Social Security disability benefits.

The panel held that the ALJ's conclusion that claimant was not disabled at the time of the hearing was supported by substantial evidence. The panel nonetheless reversed and remanded to the agency for further factfinding because the agency did not adequately consider how claimant's symptoms changed over time. The ALJ's failure to consider these changes over time impacted both her assessment of claimant's credibility and her analysis of the medical opinions. Specifically, the panel held that although the ALJ properly determined that claimant's testimony was not credible regarding his capacity in the later period of his disability claim, the ALJ erred in rejecting claimant's testimony wholesale without explaining how her rationale for finding the late period testimony not credible applied to the early period testimony. In addition, the ALJ erred by failing to consider whether the opinions of Drs. Wheeler and Krueger were reliable evidence of claimant's functioning in the earlier time period and instead seeking only a single medical opinion of claimant's general capacity over the entire period. The panel concluded that these errors were harmful. The panel instructed the ALJ on remand to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

consider whether claimant was disabled, and therefore entitled to benefits, for some qualifying, earlier portion of his alleged disability period.

## COUNSEL

Eitan Kassel Yanich (argued), Law Office of Eitan Kassel Yanich PLLC, Olympia, Washington, for Plaintiff-Appellant.

Christopher J. Brackett (argued), Special Assistant United States Attorney; Mathew W. Pile, Regional Chief Counsel; Kerry Jane Keefe, Assistant United States Attorney; Tessa M. Gorman, Assistant United States Attorney; Office of the General Counsel, Region X, Social Security Administration, Seattle, Washington; for Defendant-Appellee.

## OPINION

RAKOFF, District Judge:

Plaintiff Kenneth E. Smith appeals the district court's affirmance of the 2019 decision of an administrative law judge (ALJ) denying his application for Social Security disability benefits. The ALJ's conclusion that Smith was not disabled at the time of the hearing was supported by substantial evidence. But the court nonetheless reverses and remands this case to the agency for further factfinding, since the ALJ did not adequately consider how Smith's symptoms changed over time. The ALJ's failure to consider these changes over time impacted both her assessment of Smith's credibility and her analysis of the medical opinions. As explained further below, the ALJ shall consider on remand

whether Smith was disabled, and therefore entitled to benefits, for some qualifying, earlier portion of his alleged disability period.

## *Factual Background*[1]

Smith filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits in July 2013, alleging (as amended) that he became disabled on December 1, 2012 and has been unable to work since then, due to mental health problems triggered by an acute grief reaction to the deaths of his fiancée, mother, and grandmother during a two-month period in fall 2012. In 2013, Smith stated he could not concentrate for more than fifteen minutes at a time, he heard voices, he had problems with memory and concentration, and he did not respond well to stress. However, the record reflects that the intensity of Smith's symptoms varied substantially during the years following his alleged onset date and dramatically improved during the later years of the claimed disability period.[2]

---

[1] The Court assumes the parties' familiarity with the factual and procedural background of this case and so sets forth only those details necessary to decide this appeal. Unless otherwise specified, all quotation marks, omissions, citations, emphases, and alterations have been omitted from all sources cited herein.

[2] The record before the ALJ included medical records and medical expert testimony, Smith's own testimony, a lay witness statement from Smith's sister, and expert testimony from a vocational rehabilitation counselor. The ALJ's decision to accord less than full credit to Smith's sister's statement was supported by substantial evidence, because the ALJ gave multiple germane, well-supported reasons for discounting Smith's sister's statements. *See Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012), *superseded by regulation on other grounds*.

The ALJ concluded in 2019 that Smith had the severe impairments of major depressive disorder with psychosis, generalized anxiety disorder, and dysthymia. Nevertheless, she concluded that Smith has the residual functional capacity to perform a full range of work at all exertional levels, except "he is capable of performing tasks that require GED reasoning level of 2 or less," with "a stable routine," "no more than incidental public contact," and no "teamwork assignments." Therefore, the ALJ held that Smith was not disabled and denied his claim.

### *Discussion*

We review the district court's order affirming the ALJ's denial of social security benefits *de novo*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008), and reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard, *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012), *superseded by regulation on other grounds.* And even where this modest burden is not met, we will not reverse an ALJ's decision where the error was harmless. *See id.* at 1111.

While Smith raises a number of issues on appeal, the court addresses only those relevant to its decision to remand the case to the agency: the ALJ's rejection of Smith's testimony and her analysis of the medical opinion evidence.

## I.   Smith's Testimony

Smith testified at the 2018 hearing, describing his symptoms as of that time, including in response to the ALJ's questions. The ALJ ultimately discounted Smith's testimony as not credible, concluding that it was inconsistent with the medical evidence. But that conclusion rested on the ALJ's assessment of Smith's testimony regarding his functioning at the time of the hearing, and she did not analyze Smith's testimony regarding his capacities in past years. This was error.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Then, provided "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–1015.

The parties do not dispute that Smith presented medical evidence of an underlying impairment that could have caused some degree of the symptoms Smith has alleged. Nor does the Government assert that Smith is malingering. Therefore, the "ALJ [could] reject [Smith's] testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* This standard

is "the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). This court has set forth the specific finding required:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

*Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

Here, the ALJ clearly did more than simply recite medical evidence. The ALJ's discussion of Smith's symptoms runs for over six pages and synthesizes evidence from multiple clinical sources. This discussion identified what the ALJ perceived as inconsistencies between the medical evidence and Smith's testimony about his current capabilities. The ALJ also discounted Smith's testimony that his mental health condition was responsible for his inability to work.

But the ALJ's analysis is not clear and convincing in every respect. The ALJ discredited Smith's testimony as a whole, but her decision does not sufficiently consider the duration of, or chronological fluctuation in, Smith's

symptoms. Before this court, Smith calls the ALJ's approach to the record of Smith's treatment "selective." *Cf. Garrison*, 759 F.3d at 1017 (holding that in mental health disability cases "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment"). But the issue is not that the ALJ selected the least favorable findings from a record reflecting relatively consistent symptomatology. The record of Smith's case indicates that his symptoms varied, and generally improved, during the years following his onset date:

- From late 2012, when Smith suffered the losses of his loved ones, through October 2015, Smith's symptoms were quite severe. During this period, he testified, "I didn't want to do nothing, didn't want to go nowhere, didn't want to leave the house, sat on the couch."

- In January 2015, at his hearing before the first ALJ, Smith testified that he had significant problems with concentration, sleeping, and engaging in the activities of daily life.

- From January 2015 through December 2017, Smith volunteered a few hours a month with the fire department.

- From the middle of 2017 through roughly the end of June 2018, Smith was looking for work. He may have again been looking for work as of the date of his hearing, July 25, 2018.

The ALJ's decision does not adequately address this progression as it relates to Smith's credibility.

Notwithstanding the significant variation in Smith's symptom severity over time, the ALJ's questions about his symptoms had to do only with those he was experiencing as of the time of the hearing (*e.g.*, "Do you have sleepiness during the day?", "[A]re you currently living with someone or living alone?", "Do you do this on a regular basis?"). None of the ALJ's questions concerned Smith's symptoms during the early period of his alleged disability. The questions also related to Smith's occasional volunteer work with the fire department, which occurred after 2015. The only inquiry during the ALJ's questioning that addressed the first years of the disability claim immediately following the acute grief reaction was whether Smith had "been looking for work this entire time you've alleged your disabled?" Smith answered "Not the whole time. I have been currently though."

Smith's attorney later questioned him about the period immediately following his family members' deaths, and Smith reported more serious incapacitation. This testimony regarding the early period of his claim was not inconsistent with the early-period assessments of two examining psychologists—Dr. Wheeler and Dr. Krueger. Though the ALJ permissibly discounted their medical opinions as unrepresentative of Smith's full-period capabilities, the ALJ's own findings still permit the conclusion that this record evidence corroborates the portion of Smith's testimony relating to his early-period disability.

Likewise, as discussed further below, few of the ALJ's questions to the testifying medical expert, Dr. Layton, distinguished clearly between various periods of time. Many of the treatment records to which Dr. Layton pointed concerned 2015 and 2017. As Smith's counsel put it at the hearing, "those all appear to be very recent." Dr. Layton also

acknowledged that the record did not enable him to determine how long Smith suffered a disabling grief reaction in response to his family losses.

The ALJ therefore erred by disregarding *all* of Smith's testimony, including the portion about his early-period incapacity, on the basis of inconsistencies only clearly applicable to the late-period testimony. This reasoning fails to comply with our holding in *Brown-Hunter*, that a claimant's testimony regarding the severity of subjective symptoms can only be disregarded when the ALJ "specif[ies] which testimony she finds not credible, and then provide[s] clear and convincing reasons, supported by evidence in the record, to support that credibility determination." 806 F.3d at 489. In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."). We therefore hold that the ALJ erroneously rejected Smith's *early-period testimony*, since the ALJ provided no specific, clear, and convincing reasons to find this portion of Smith's testimony not credible.

The Commissioner argues that the ALJ found Smith's testimony less than credible because it contained inconsistencies, and because Smith's improvement with medication was inconsistent with his claimed disability. But this bolsters rather than cuts against the objection that Smith's testimony could not be discredited as a whole because of changes over time or inconsistencies relevant only to portions of testimony describing a certain period. The record evidence reflects that, over time, Smith moved from

a state where he appears to have been unable to engage in meaningful work to a state in which he was significantly less hindered. Therefore, it may be that Smith was disabled for a qualifying portion of the time from his alleged onset date, even if not for the full period.

As Smith argues, during the worst period of his symptoms, record evidence concerning Smith's daily activities neither contradicts his testimony nor meets the threshold for full-time work, the two grounds we have recognized for using daily activities to form a basis of an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ made no clear and convincing findings regarding either point, so Smith's testimony about his daily activities does not justify an adverse credibility determination *as to his early-period testimony.* Likewise, Smith's improvement with medication does not necessarily mean he did not experience disabling symptoms prior to receiving appropriate medication or that he could work before his symptoms stabilized.

We therefore hold that, although the ALJ properly determined that Smith's testimony was not credible regarding his capacity in the later period of his disability claim, the ALJ erred in rejecting Smith's testimony wholesale without explaining how her rationale for finding the late-period testimony not credible applied to the early-period testimony.

## II.  Medical Opinions

The ALJ also erred in her assessment of the medical opinion evidence, because she did not adequately consider the progression of Smith's symptoms over time in making her credibility determinations. An ALJ must evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(c).

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians. Where a treating or examining physician's opinion is contradicted by another doctor, the Commissioner must determine credibility and resolve the conflict." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).[3]

Between 2012 and the hearing in 2018, Smith underwent numerous psychological examinations and received mental health treatment from several providers. The ALJ considered the opinions in the record and focused on those from three key medical experts:

- ***Dr. Kimberly Wheeler*** of the Washington State Department of Social and Health Services, examined Smith twice (on December 20, 2012 and June 29, 2017), and diagnosed him with major depression, recurrent, severe with possible psychotic symptoms, as well as with bereavement. She found several symptoms affecting Smith's ability to work, as well as his mood, speech, appetite, sleep, and loss of interest in usual activities. She concluded that he was

---

[3] Smith's claim was filed prior to the Commissioner's revision of the rules for evaluating medical evidence at the administrative level. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844, 5844 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1520c(a)).

severely limited in his ability to complete a normal workday or workweek without interruption from psychologically based symptoms, markedly limited in his ability to maintain appropriate behavior in a work setting, and moderately limited in his ability to complete work tasks.

- ***Dr. Keith Krueger*** of Washington State Department of Social and Health Services, examined Smith twice (on July 23, 2013 and November 4, 2014), and diagnosed Smith with major depression, recurrent, with psychotic features. He found that Smith was experiencing various symptoms affecting his ability to work. According to Dr. Krueger, Smith reported he was having both visual and auditory hallucinations of his late mother and fiancée, was sleeping only four hours at a time with sleeping pills, and was taking a couple of one-hour naps during the day. Dr. Krueger also concluded that Smith had a severe limitation in completing a normal workday or workweek without interruptions, as well as a marked limitation in communicating and performing effectively in a work setting.

- ***Dr. Kent Layton***, a clinical psychologist reviewed Smith's record and testified at the request of the Social Security Administration. Dr. Layton agreed that there was sufficient clinical evidence in the record to support the diagnoses of major depressive disorder with psychotic features, anxiety, and dysthymia. He further testified that none of the conditions constituted a listed impairment but that they did

impose limitations on Smith's functioning. Still, Layton's opinion was that Smith could perform simple, repetitive, routine tasks or complex, routine, well-learned tasks. And although he might have occasional trouble with supervisors and could not be assigned to duties involving teamwork, he could handle incidental contact with the general public. Regarding the opinions of Drs. Wheeler and Krueger, Dr. Layton opined that they were overly influenced by Smith's grief at the loss of his loved ones, since the examinations followed close in time.

Only Dr. Layton testified.

The ALJ ultimately assigned "little weight" to Dr. Wheeler's opinion and "limited weight" to Dr. Krueger's opinion, relying instead on Dr. Layton's testimony, which was inconsistent with the opinions provided by the other two doctors. The ALJ reasoned that the opinions of Drs. Wheeler and Krueger were entitled to less weight because they had examined Smith relatively soon after the death of his loved ones, because they did not specifically describe Smith's levels of functioning, and because they had not reviewed the full record of Smith's treatment. The ALJ explained she relied on Dr. Layton because he had reviewed the entire record and because she found his testimony consistent with Smith's "demonstrated functioning." In short, the ALJ determined that Dr. Layton's opinion was more reliable as a statement of Smith's capacity over the alleged disability period as a whole.

But we have previously observed that in many mental health conditions, "[c]ycles of improvement and debilitating symptoms are a common occurrence." *Garrison*, 759 F.3d at 1017. We therefore held that "in such circumstances it is

error for an ALJ to pick out a few isolated instances of improvement . . . and to treat them as a basis for concluding a claimant is capable of working." *Id.* Physician reports of "improvement" are thus not "sufficient to undermine the repeated diagnosis of [the alleged mental health] conditions" in an earlier physician's report or render the earlier medical opinions "inconsistent" and so not credible. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200–1201 (9th Cir. 2008).

The ALJ in this case erred in discrediting the opinions of Drs. Wheeler and Krueger for the same reasons: the later improvement highlighted by Dr. Layton, who reviewed more than five years of Smith treatment records but never himself examined Smith, does not render the earlier medical opinions unreliable because they report more severe symptoms.[4] Nor was it appropriate to discredit the opinions of Drs. Wheeler and Krueger because their examinations occurred only "very shortly after" or "seven months after" the deaths of Smith's loved ones. While that timing may render the opinions unreliable as a statement of Smith's condition generally during the whole five-year period covered by the claim, it is not a valid reason to discredit the examining psychologists' opinions as evidence of Smith's functioning during the earlier period. The ALJ therefore erred by failing to consider whether the opinions of Drs. Wheeler and Krueger were reliable evidence of Smith's functioning in that earlier period and instead seeking only a single medical opinion of Smith's general capacity over the entire period.

---

[4] The ALJ also credited the written opinions of two other non-examining state psychological consultants for the same reason she credited Dr. Layton's opinion: that they had reviewed medical records from multiple providers.

### *Conclusion*

The ALJ undertook a careful consideration of Smith's disability claim and a detailed analysis of the record. But the ALJ nonetheless erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether Smith was disabled for only a qualifying, early portion of that time. This error affected both the ALJ's assessment of Smith's testimony and her analysis of the examining psychologists' medical opinions. The court further concludes that these errors were harmful: the ALJ's decision to discredit the early-period evidence and not to separately consider whether Smith was disabled for a portion of the alleged period was material to her residual functional capacity finding and thus to her ultimate disability determination.

Therefore, the court remands this case to the agency for further proceedings consistent with this Opinion.

**REVERSED AND REMANDED.**