**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROBERT CONWAY,

*Plaintiff-Appellant*,

v.

MARTIN J. O'MALLEY,
Commissioner of Social Security,

*Defendant-Appellee*.

No. 22-35427

D.C. No.3:21-cv-00712-HZ

OPINION

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted April 19, 2023
Portland, Oregon

Filed March 26, 2024

Before: Johnnie B. Rawlinson and Jennifer Sung, Circuit
Judges, and Brian M. Morris,[*] District Judge.

Opinion by Judge Sung;
Dissent by Judge Rawlinson

---

[*] The Honorable Brian M. Morris, United States District Judge for the
District of Montana, sitting by designation.

# SUMMARY[**]

## Social Security

The panel reversed the district court's judgment upholding the denial of social security benefits by an administrative law judge ("ALJ"), and remanded with the instruction that the district court remand to the agency for further proceedings.

The ALJ found that claimant had the residual functional capacity to perform "medium work" as defined in 20 C.F.R. 404.1576(c) with some limitations. At step five of the disability determination analysis, the ALJ—relying solely on the vocational expert's testimony—found that claimant could perform other work that existed in significant numbers in the national economy, and accordingly, denied disability benefits.

Pursuant to *Terry v. Saul*, 998 F.3d 1010, 1014 (9th Cir. 2021), the panel presumed that the vocational expert was aware of the definition of the term "medium work," and that the ALJ and the expert would have shared an understanding that the term "medium work" implied a six-hour standing and walking limitation.

Claimant alleged that the *Terry* presumption was rebutted on cross-examination of the expert. The panel held that the presumption was rebuttable, and that the presumption was rebutted in this case. The expert's significantly different responses to the ALJ's and counsel's

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

questions revealed that the expert did not understand the ALJ's hypothetical to impliedly include a six-hour standing and walking limitation. Because of this, the expert's response to the ALJ's question had no evidentiary value to support the ALJ's finding that the plaintiff can perform jobs in the national economy. The error was not harmless because the expert's testimony compels the finding that there are not enough jobs in the medium work range that claimant can perform. Consequently, the panel remanded to the Commissioner of Social Security so that an ALJ can further develop the record and make specific findings on whether claimant had transferable work skills.

Judge Rawlinson dissented because the majority opinion does not adhere to the substantial evidence standard of review and fails to give proper deference to the ALJ's decision. She would hold that the ALJ's decision was supported by substantial evidence.

**COUNSEL**

Paul M. Warren (argued) and Kevin Kerr, Kerr Robichaux & Carroll, Portland, Oregon, for Plaintiff-Appellant.

Sarah E. Moum (argued), General Attorney; Matthew Pile, Associate General Counsel; Office of the General Counsel, Office of Program Litigation, Social Security Administration, Baltimore, Maryland; Renata A. Gowie, Civil Division Chief; Kevin C. Danielson, Assistant United States Attorney; Natalie K. Wight, United States Attorney; United States Department of Justice, United States Attorney's Office, Portland, Oregon; for Defendant-Appellee.

**OPINION**

SUNG, Circuit Judge:

Claimant Robert Conway appeals the district court's judgment upholding the denial of social security benefits by an administrative law judge ("ALJ"). Reviewing de novo the district court's decision, *Leach v. Kijakazi*, 70 F.4th 1251, 1254 (9th Cir. 2023), we reverse. The vocational expert's testimony does not support the ALJ's finding that work Conway could perform exists in significant numbers in the national economy. Because the ALJ relied on the vocational expert's testimony in concluding that Conway was not disabled, we remand with the instruction that the district court remand the case to the agency for further proceedings.

**Factual and Procedural Background**

Conway applied for disability benefits in 2017. A state disability determination service initially evaluated Conway's claim. State agency physicians Dr. Berner and Dr. Johnson each completed a "physical residual functional capacity assessment" for Conway. That assessment asks the physician to "rate the individual's exertional limitations." Both Dr. Berner and Dr. Johnson found that Conway has an exertional limitation of "Stand[ing] and/or walk[ing] (with normal breaks) for a total of: About 6 hours in an 8-hour workday." The state service determined that Conway was not disabled.

Conway disagreed with that determination and requested a hearing before an ALJ. At his hearing, the ALJ called a vocational expert to testify and asked whether there was "any medium work" for a hypothetical person of Conway's "age, education, and past work experience, who's limited to

medium work, SVP [Specific Vocational Preparation] 2, entry level work." The vocational expert responded that there would be such work and provided "three sample occupations": hospital housekeeper, laundry worker, and dishwasher.

On cross-examination, Conway's counsel asked the vocational expert, "if someone's only able to be on their feet for six out of eight hours, maximum, would they be able to do any medium work or the jobs you listed?" The expert responded, "The three sample occupations would not comport with that additional work restriction and [*sic*] would be difficult for me to provide substitute unskilled, medium occupations where a worker would be capped at being on their feet no more than six hours in a workday."

After the hearing, the ALJ denied Conway's application for benefits in a written opinion, which follows the well-established five-step disability determination analysis. *See* 20 C.F.R. § 416.920(a)(4). The ALJ found that Conway has two severe impairments: degenerative disease of the lumbar spine and bipolar affective disorder. The ALJ found Dr. Berner's and Dr. Johnson's assessments to be persuasive and supported by the record. The ALJ also found that Conway has the residual functional capacity ("RFC") to perform "medium work as defined in 20 CFR 404.1576(c) except he is limited to simple routine tasks and entry level jobs with a specific vocational preparation level of two."[1] At step four, the ALJ found that Conway could not perform his past work as a pipefitter. But at step five, the ALJ—relying solely on

---

[1] An RFC is "the most [one] can still do despite [one's] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is used at step four to determine if a claimant can do past relevant work and at step five to determine if a claimant can adjust to other work. 20 C.F.R. § 416.920(e).

the vocational expert's testimony—found that Conway could perform other work that exists in significant numbers in the national economy. Accordingly, the ALJ denied disability benefits.

The Appeals Council denied Conway's appeal. Conway then filed this action. The district court granted judgment to the Acting Commissioner of the Social Security Administration ("Commissioner"). Conway timely appeals.

## Discussion

The issue presented is whether the ALJ's finding at step five—that there is work Conway could perform that exists in significant numbers in the national economy—is supported by substantial evidence. For the following reasons, we conclude that it is not.

If the ALJ reaches the final step of the five-step process, the ALJ may rely on a vocational expert's testimony to find that there are jobs that the claimant can perform and that there are enough of those jobs in the national economy. *Leach*, 70 F.4th at 1254. Typically, the ALJ questions the vocational expert by describing a hypothetical person with the claimant's limitations. When a claimant challenges the ALJ's reliance on the expert's testimony, as Conway does here, we must determine whether the ALJ's hypothetical accurately described all of the claimant's limitations. *Id.* at 1255. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (cleaned up). "In that situation, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Id.* (cleaned up).

In this case, the parties agree on the following points: The ALJ generally credited Dr. Berner's and Dr. Johnson's opinions, and both doctors found that Conway's exertional limitations include a limitation of standing and/or walking "for a total of: About 6 hours in an 8-hour workday." The ALJ's hypothetical was *not* accurate if it did not include that six-hour standing/walking limitation. The ALJ's hypothetical did not *expressly* include that limitation. Rather, the ALJ asked about a hypothetical person "who's limited to medium work, SVP 2, entry level work."

The Commissioner argues that the hypothetical's reference to "medium work" impliedly incorporated the six-hour standing/walking limitation. In *Terry*, we considered a hypothetical that similarly used the term "medium work," and we held that a vocational expert "is presumptively aware of the agency's well-established definition of this term of art." *Terry v. Saul*, 998 F.3d 1010, 1011 (9th Cir. 2021). The agency's regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). Although the regulation "does not include any express standing and walking limitation," in a 1983 published Social Security Ruling, "the Commissioner interpreted 'medium work' to 'require[] standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.'" *Terry*, 998 F.3d at 1013 (quoting SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983)).

Conway concedes that, under *Terry*, we presume that the vocational expert was aware of the definition of the term "medium work," and therefore, we also presume that "the ALJ and the expert would have shared an understanding that the term 'medium work' implies a six-hour standing and

walking limitation." 998 F.3d at 1014. Conway, however, contends that this presumption was rebutted on cross-examination.

First, we consider whether the presumption established in *Terry* is rebuttable. We did not consider this issue in *Terry*, because Terry made no attempt to rebut the presumption. 998 F.3d at 1013 ("Terry's counsel did not object to the expert's qualifications or otherwise challenge the expert's testimony at the administrative hearing."). Generally, presumptions are rebuttable. *See, e.g.*, *Hernandez v. Garland*, 52 F.4th 757, 767 (9th Cir. 2022) (rebuttable presumption of reliability for government-prepared document); *Chenette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) (rebuttable presumption that cell phones are residential); *United States v. Wright*, 49 F.4th 1221, 1226 (9th Cir. 2022) (rebuttable presumption that defendant is lawfully entitled to seized property). We see no reason to make an exception to that general rule here.

Second, we consider whether the presumption was rebutted in this case. When the ALJ asked about a limitation to "medium work," the vocational expert responded that there would be work in the national economy and identified three sample occupations. But when Conway's counsel expressly asked about a six-hour standing and walking limitation, the vocational expert responded differently: He testified that the three sample occupations could not accommodate that "additional work restriction" and that it would be "difficult" to provide substitute occupations. The expert's significantly different responses reveal that the expert did *not* understand the ALJ's hypothetical to impliedly include a six-hour standing and walking limitation. Therefore, the *Terry* presumption was rebutted.

The Commissioner argues that the *Terry* presumption was not rebutted because Conway's counsel did not use the same exact wording that the doctors used to describe Conway's limitation. An ALJ does not need to use "identical wording" when describing a claimant's limitations to the vocational expert, "so long as the limitations are not materially altered." *Id.* at 1258. And, if the question does not expressly describe a particular limitation, we also ask whether the expert would have understood the question to imply that limitation. *Terry*, 998 F.3d at 1014. Applying these same standards to the question asked by Conway's counsel, we conclude that the question accurately described Conway's limitation.

Specifically, the Commissioner argues that counsel's question was inaccurate because, in the Commissioner's view, the doctors did not find that Conway should be limited to standing and walking limitation for a "maximum" of six out of eight hours. The Commissioner, however, ignores that the doctors found that Conway should have a standing and walking "limitation" of "a total of: About six hours in an eight-hour workday." When a person is limited to standing and walking for a "total" of six hours, six hours is the maximum amount of time that the person should stand and walk.[2] Counsel did not need to use identical wording to describe Conway's limitation, and counsel's use of the word "maximum" instead of "total" did not materially alter the limitation.

---

[2] "Total" means "aggregate, sum," or "an entire quantity or configuration." *See Webster's Third New Int'l Dictionary*, 2414 (1981). "Maximum" means an "upper limit allowed by law or other authority." *Id.* at 1396.

The Commissioner also argues that counsel's question was inaccurate because it described a limitation of "six hours" instead of "*about* six hours." The omission of the word "about" did not materially alter the limitation because it was implied. When completing a physical RFC assessment, doctors typically use the term "about" when prescribing a limitation of "six hours in an eight-hour workday"—just like Dr. Berner and Dr. Johnson did in this case.[3] In other words, "about six hours in an eight-hour workday" is a term of art that doctors commonly use in RFC assessments. An expert who has significant experience in the vocational rehabilitation field and as an expert witness in social security cases is presumptively familiar with that term of art. *See Terry*, 998 F.3d at 1013. And, in this case, it is undisputed that the expert had such experience. Thus, when Conway's counsel asked the expert about a limitation of "six out of eight hours," the expert would have understood counsel's question to imply a limitation of "about six out of eight hours." *See id.* at 1014. Nothing in the expert's

---

[3] *See, e.g.*, *Lee v. Berryhill*, 721 F. App'x 604, 607 (9th Cir. 2017) ("Nonexamining physicians Dr. Alley, Dr. Pritchard, and Dr. Eder all conclude that Lee can . . . stand and/or walk about six hours in a workday."); *Ludwig v. Astrue*, 681 F.3d 1047, 1049 (9th Cir. 2012) ("The Social Security Administration's medical consultant . . . opined that Ludwig could . . . stand or walk for about 6 hours in an 8-hour workday. . . ."); *Charmaine S. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-01313-CL, 2022 WL 2072605, at *4 (D. Or. June 8, 2022), *aff'd sub nom. Simmons v. Kijakazi*, No. 22-35627, 2023 WL 4173026 (9th Cir. June 26, 2023) ("State agency consultants Dr. Mark Magdaleno and Dr. Gordon Hale both opined that Plaintiff was limited to . . . standing and/or walking 'about 6 hours in an 8-hour workday.'"); *Robert C. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-CV-00712-HZ, 2022 WL 972410, at *2 (D. Or. Mar. 30, 2022) ("Both consultants found that Plaintiff would be able to 'Stand and/or walk (with normal breaks) for a total of: About 6 hours in an 8-hour workday.'").

response to counsel's question suggests that he understood counsel to be asking about a limitation of *precisely* six hours. Therefore, we conclude that counsel's omission of the word "about" did not materially alter the limitation.

Because the ALJ's hypothetical did not expressly incorporate the six-hour standing and walking limitation, and cross-examination revealed that the expert did not understand the ALJ's hypothetical to impliedly include that limitation, the ALJ failed to accurately describe Conway's limitations. Consequently, the expert's response to the ALJ's question "has no evidentiary value" to support the ALJ's "finding that the claimant can perform jobs in the national economy." *Leach*, 70 F.4th at 1255 (cleaned up).

This error was not harmless because the expert testified that a person with a six-hour standing and walking limitation could *not* perform the three jobs he had identified and that he would have difficulty providing substitutes at the medium work level. Indeed, that expert testimony compels the finding that there are not enough jobs in the medium work range that Conway can perform. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) (awarding benefits where expert answered alternative hypothetical questions that incorporated all of the claimant's limitations); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399–400 (9th Cir. 1988) (awarding benefits because "no further proceedings are necessary to develop the administrative record" where the expert's response on cross-examination established that there were no jobs the claimant could perform); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (awarding benefits based on expert's responses on cross-examination).

Still, remand is necessary because the agency may find that a claimant who is "of advanced age (age 55 or older)" and limited to sedentary or light work is not disabled if the claimant has skills that are transferable to work he can perform despite his impairments. *See* 20 C.F.R. § 404.1568(d)(4). And in this case, the ALJ did not ask the expert whether there is light or sedentary work that someone with Conway's RFC can perform, or make findings about the transferability of Conway's skills to such work.[4] *See* SSR 82-41, 1982 WL 31389 at \*7 ("When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision."). Consequently, we remand this case to the Commissioner so that the ALJ can further develop the record and make specific findings on whether Conway has transferable work skills. *See, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *Chavez v. Bowen*, 844 F.2d 691, 694 (9th Cir. 1988).

## Conclusion

Where, as here, an ALJ uses the term "medium work" in its hypothetical question, there is a presumption that the expert understood that "'medium work' implies a six-hour standing and walking limitation." *Terry*, 998 F.3d at 1014. However, that presumption was rebutted in this case because, on cross-examination, Conway's counsel explicitly asked the expert about a six-hour standing and walking

---

[4] The ALJ concluded that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." That conclusion, however, is based on the ALJ's unsupported finding that there are enough medium jobs that Conway can perform.

limitation, and the vocational expert gave a different answer. Indeed, the expert's answer on cross-examination compels the finding that there are not enough medium work jobs that Conway can perform in the national economy. Therefore, the ALJ's contrary finding is not supported by substantial evidence.

**REVERSED AND REMANDED.**

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the majority opinion because it does not adhere to the substantial evidence standard of review and because it fails to give proper deference to the decision of the Administrative Law Judge (ALJ).

Although the majority mentions the substantial evidence standard of review in stating the issue before us, *see Majority Opinion*, p. 6, it then proceeds to ignore the standard of review in its analysis.

I agree with the majority that the issue presented is whether the decision of the ALJ is supported by substantial evidence. After properly applying the substantial evidence standard of review, rather than the de novo review conducted by the majority, I conclude that the ALJ's decision is supported by substantial evidence in the record.

When reviewing decisions of an ALJ, we apply the substantial evidence standard of review. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). This is a deferential standard of review. *See id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The evidence must be more than a mere scintilla but may be less than a

preponderance. . . ." *Id.* (citation omitted).  This standard "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The United States Supreme Court has compared the substantial evidence standard to that of clear error.  *See id.* And we have described this standard as "modest." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

In applying the substantial evidence standard of review, "if evidence exists to support more than one rational interpretation, we must defer to the [ALJ's] decision." *Batson v. Comm'r*, 359 F.3d 1190, 1193 & n.1 (9th Cir. 2004) (citation omitted).

This case turns on the meaning of "medium work."  The applicable Social Security ruling defines medium work as requiring "standing or walking, off and on, for a total of *approximately* 6 hours in an 8-hour workday."  Social Security Ruling (SSR) 83-10, 1983 WL 31251 at *6 (Jan. 1, 1983) (emphasis added); *see also Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) ("In a 1983 published Social Security Ruling, the [Social Security] Commissioner interpreted medium work to require standing or walking, off and on, for a total of *approximately* 6 hours in an 8-hour workday."), quoting SSR 83-10 (alteration and internal quotation marks omitted) (emphasis added).

In *Terry*, we clarified that an experienced Vocational Expert (VE) would understand a reference to medium work as incorporating the longstanding agency interpretation of *approximately* six hours of standing or walking in an eight-hour workday. *See id.*  That is precisely what happened in this case.  The ALJ posed the following question to the VE:

> Question:     Assume     a     person . . . of
>                        Claimant's   age,   education,

and past work experience [who is] *limited to medium work . . .*"

. . .

Question:      Any *medium work* for such a hypothetical person in the national economy?

Answer:        There would be, Your Honor. Let me provide three sample occupations.   So   first, unskilled, *medium* occupation I . . . for this RFC would be hospital housekeeper . . . SVP [Specific           Vocational Preparation] 2, and *medium*, and I have an estimated 84,000   people   working nationally.   Second sample occupation would be laundry worker . . . SVP 2 and *medium*, and we have an estimated   92,000   people working nationally, and then, third would be dishwasher . . . SVP 2, and *medium*, and we have a little over 300,000 people  working  nationally. So, these are three unskilled, *medium* occupations . . ."

(Emphasis Added).

On cross-examination, counsel for the claimant asked a completely different question to the VE:

> Question:     Mr. Hincks, if someone's only able to be on their feet for six out of eight hours, *maximum*, would they be able to do any medium work or the jobs you listed?
>
> Answer:       The three sample occupations would not comport with that *additional work restriction* and would be difficult for me to provide substitute unskilled, *medium* occupations where a worker would be capped at being on their feet no more than six hours in a workday . . .

(Emphasis Added).

The VE characterized the limitation to six hours maximum as an "additional work restriction" that "would not comport" with the "medium" work occupations he gave as examples of work that the claimant could perform. From this response, it is obvious that the VE did not consider counsel's question to incorporate the accepted definition of medium work as requiring "standing or walking, off and on, for a total of *approximately* 6 hours in an 8-hour workday." SSR 83-10, 1983 WL 31251 at \*6 (emphasis added); *Terry* 998 F.3d at 1013 (emphasis added). Rather, counsel's question incorporated the "additional work restriction" of a maximum of six hours standing or walking in an eight-hour

workday, as opposed to the accepted definition of *approximately* six hours standing or walking in an eight-hour workday.

Having before him the VE's responses to these two different questions, it was well within the ALJ's authority to accept the VE's response to his question, which incorporated the accepted definition of medium work and not the VE's response to counsel's question that included an "additional work restriction" that did "not comport with" the accepted definition of medium work. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. . . .") (citation omitted).

In *Terry*, we explained that an experienced VE would understand a reference to medium work as incorporating the longstanding agency interpretation of *approximately* six hours of standing or walking in an eight-hour workday. *See* 998 F.3d at 1013 (quoting SSR 83-10). Nothing about counsel's question to the VE casts doubt on the VE's understanding of the longstanding definition of medium work. To the contrary, the VE clearly indicated the distinction between his understanding of the longstanding definition of medium work and the "additional work restriction" of a maximum of six hours in a workday by opining that under the accepted definition of medium work there were jobs that the claimant could perform, but under the "additional work restriction" added to the accepted definition of medium work, the claimant could not perform the jobs designated as medium work. This circumstance more than satisfied the substantial evidence standard of review. *See Ahearn*, 988 F.3d at 1115 (noting that the substantial evidence standard is deferential); *see also*

*Biestek*, 139 S. Ct. at 1154 (clarifying that the substantial evidence "is not high"); *Smith*, 14 F.4th at 1111 (describing the standard as "modest"). Indeed, if there is more than one rational interpretation of the evidence, "we must defer to the [ALJ's] decision." *Batson*, 359 F.3d at 1193 & n.1 (citation omitted). The majority concludes that the ALJ's hypothetical was not accurate because it did not include the six-hour standing/walking limitation. The majority bases this conclusion on the fact that both medical experts found a standing/walking limitation of "[a]bout six hours in an 8-hour workday." *Majority Opinion*, p. 7. But the medical experts' opinions of *about* six hours were consistent with the longstanding definition of medium work as "approximately" six hours in an eight-hour workday rather than with counsel's definition of medium work as a maximum of six hours in an eight-hour workday.

The majority also concludes that the presumption that the ALJ and the VE shared an understanding regarding the definition of medium work was rebutted by the VE's response to counsel's question. However, as discussed, the question asked by counsel was completely different and did *not* incorporate the longstanding definition of medium work. The VE clearly recognized the difference because he characterized counsel's question as adding "an additional work limitation" of a maximum of six hours in a workday as opposed to "approximately" or "about" six hours. Counsel's question deviated from the longstanding definition of medium work as "approximately" six hours and from the medical experts' opinions of "about" six hours. The VE and ALJ shared an understanding of "approximately" six hours as evidenced by the VE's different responses to the different questions. The VE responded to the ALJ's question consistently with the longstanding definition of medium

work as "approximately" six hours in a workday by listing medium work occupations. In contrast, the VE responded to counsel's question which was not consistent with the longstanding definition of medium work by concluding that the additional work limitation (a maximum of six hours rather than "approximately" or "about" six hours) would preclude medium work.[1]

The majority concludes "that counsel's omission of the word 'about' did not materially alter the limitation." *Majority Opinion*, p. 11. But not only is that conclusion an impermissible de novo review of the ALJ's decision, it is belied by the record. The VE described counsel's omission of "about" as an "additional work limitation" that rendered the claimant unable to perform medium work. Obviously then, the VE did not understand counsel's question to imply "about six hours." Nothing could be more material. And even if that is the interpretation of the majority, the ALJ was not required to adopt that interpretation. *See Garrison*, 759 F.3d at 1010.

An everyday example illustrates the difference between the two questions posed to the VE: If someone says that an item costs $6.00, the general understanding would be that the item costs exactly $6.00. On the other hand, if someone says

---

[1] "Approximately" means "[i]n an approximate manner, nearly; elliptical with near approach to accuracy." *Approximately*, OXFORD ENGLISH DICTIONARY,
https://www.oed.com/dictionary/approximately_adv?tab=meaning_and _use#198575 (last visited Mar. 13, 2024).

"About" means "[e]xpressing approximation. Nearly, approximately, more or less." *About*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/about_adv?tab=meaning_and_use#67 85227 (last visited Mar. 13, 2024).

that an item costs "about" $6.00, the general understanding would be that the item costs approximately $6.00, not exactly $6.00.  The same is true in this case.  The longstanding definition of medium work, which we presume both the ALJ and VE were aware of, *see Terry*, 998 F.3d at 1013, was of "approximately" or "about" six hours in a workday.  Counsel's definition, which omitted "about" or "approximately" did not comport with the shared definition of the ALJ and VE, as evidenced by the VE's different response to the question that did not include the longstanding definition of medium work.

In sum, the ALJ's decision is supported by substantial evidence, and he was not required to accept the VE's answer that was predicated on what the VE described as an "additional work limitation" that was not part of the longstanding definition of medium work shared by the ALJ, the VE, and the medical experts.  If remanded, all the ALJ will do is reaffirm that he and the VE share the understanding that medium work is "about six hours" in an eight-hour workday, and that Conway's RFC of medium work of about six hours enabled him to perform the three jobs identified by the VE.  Because the majority unfortunately fails to apply the substantial evidence standard of review and re-interprets the record, I respectfully dissent.