NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 6 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSEPH MATA III,

           Plaintiff-Appellant,

  v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

           Defendant-Appellee.

No.   22-35482

D.C. No. 1:21-cv-03084-RMP

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted February 14, 2023
Seattle, Washington

Before:  PAEZ and VANDYKE, Circuit Judges, and LIBURDI,[**] District Judge.
Dissent by Judge PAEZ.

Joseph Mata III appeals the district court's affirmation of the denial of his

application for disability benefits.  "We review the district court's judgment de

novo" and "set aside a denial of benefits only if it is not supported by substantial

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**] The Honorable Michael T. Liburdi, United States District Judge for the District
of Arizona, sitting by designation.

evidence or is based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (citation omitted).

To establish a disability for purposes of the Social Security Act, a claimant must prove that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "In order to determine whether a claimant meets this definition, the ALJ employs a five-step sequential evaluation." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

In this case, the ALJ found that Mata was not disabled at step five because he could perform other work available in the national economy. The ALJ gave limited weight to the testimony of Mata and the statements of Mata's mother, and limited weight to the opinions of several medical professionals. Because the ALJ applied the correct legal standards and supported the findings with substantial evidence, we affirm.

*First*, the ALJ gave specific, clear, and convincing reasons for discounting Mata's subjective pain testimony. *See id.* at 1112–13. The dissent critiques each of these reasons because it concludes the ALJ took an "improper view of Mata's schizophrenic symptoms," which caused the ALJ to weigh the evidence incorrectly.

2

But our job is not to reweigh the evidence and each of the ALJ's findings are clear, specific, and convincing and supported by substantial evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).

Substantial evidence supports the ALJ's conclusion that Mata's testimony regarding the severity of his symptoms conflicts with objective medical evidence because his condition improved when he followed his prescribed treatment. 20 C.F.R. § 416.929; *see Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Contrary to the dissent's argument, the ALJ could rationally rely on evidence of Mata telling his doctors he was healthy, as well as testimony from Mata's mother that Mata did not believe he needed medication, to find that his symptoms were not as severe as he claimed. *See Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (requiring that an ALJ's "conclusion … be upheld" when "evidence is susceptible to more than one rational interpretation" (citation omitted)). The dissent argues that the ALJ "arbitrarily attribute[d]" these statements to "other causes," i.e., that the ALJ arbitrarily chose to *believe the statements accurately* reflected Mata's health, but the ALJ's choice accept these statements at face value was not arbitrary. Perhaps the ALJ could have rationally attributed to delusional thinking Mata's statements that he was healthy and improving, but it was not irrational—especially in the light of other evidence in the record undermining the claimed severity of his condition—to treat those statements as an accurate reflection of Mata's health.

3

The dissent also criticizes the ALJ for picking "isolated periods of improvement or stability" to support its finding that Mata improved with medication. But the record shows that these periods "*in fact* constitute examples of a broader development." *Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (noting that such a finding "satisf[ies] the applicable 'clear and convincing' standard"). The ALJ noted reports from December 2015, January 2016, February 2016, September 2017, December 2017, January 2018, March 2018, May 2019, June 2019, August 2019, September 2019, October 2019, January 2020, March 2020, and November 2020 that all gave positive indications of Mata's mental health. The ALJ did not rely on mere isolated incidents of improvement, but rather on reports of sustained improvement over more than four years.

Next, the ALJ discounted Mata's testimony because it conflicted with the objective medical evidence demonstrating a consistently "benign presentation" at his medical appointments and examinations. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The dissent argues that the evidence conflicting with Mata's subjective pain testimony is outweighed by other objective evidence indicating he was still limited in his work ability. But again, our job is not to put the evidence supporting Mata's testimony on one side and the evidence against on the other and reweigh it; we review for substantial evidence. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). We agree with our dissenting colleague that our caselaw

4

does not permit us to "affirm simply by isolating a specific quantum of supporting evidence," *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quotation omitted), but that does not permit us to reweigh the evidence, *see Ahearn*, 988 F.3d at 1115. "[T]he key question" remains "whether there is substantial evidence" supporting the ALJ's finding of no disability, not "whether there is substantial evidence that could support a finding of disability." *Jamerson*, 112 F.3d at 1067.

The dissent further claims that "[m]any of the record citations that the ALJ cites … do not support the propositions for which they are cited." To take one of the dissent's examples, the dissent points to a January 2016 medical record that, according to the dissent, reports Mata as having "a vague, circumstantial thought process." The dissent correctly summarizes the January 2016 record. So did the ALJ. The ALJ cited this record as indicating Mata had a "mostly logical but often vague and/or circumstantial/tangential thought process[] at times." The dissent criticizes the ALJ for citing this January record as evidence of "stabilization" when the January record also indicates that Mata had "inconsistent recent or remote memory, … anxious mood and affect, and appeared unkempt." But the ALJ did not rely on this record for some general notion of "stabilization," nor did the ALJ rely on this record for a finding related to Mata's memory, appearance, or whether Mata

5

had an "anxious mood."[1] The ALJ instead relied on the record to show that Mata's "treatment providers and examiners have observed [him] with cooperative[] … or pleasant behavior" and to show that he "typically exhibits … full alertness and orientation" and "normal thought content, including no psychosis, hallucinations, delusions, obsessive compulsive or impulsive themes, and/or suicidal/homicidal ideation." The January 2016 record supports each of those findings. Nor do any of the dissent's other examples show that the ALJ relied on a record for a proposition that record did not support. Substantial evidence thus supports the ALJ's finding that Mata's improvement with medication undermined his subjective pain testimony.

Finally, the ALJ reasonably discounted Mata's testimony because his poor work history—predating October 1, 2015, when Mata "stop[ped] working … [b]ecause of [his] condition"—implied that Mata's condition did not force him to stop working in 2015 and because Mata's consistent failure to follow

---

[1] True enough, a citation to the January 2016 record does appear within two string-cites offered to support several findings, including a finding that Mata often presented with a "calm" mood. The January 2016 record would not support this finding, but there is no reason to read the ALJ as relying on that record—just one citation within a lengthy string-cite—to support that finding. The string-cite containing the January 2016 record followed a sentence listing six ways that Mata presented at his appointments and the ALJ cited the January 2016 record to support other portions of the sentence, which it does. Similarly, the observation that Mata presented as "calm" at his appointments is supported by other record citations. The dissent's criticism boils down to a dispute with the ALJ's choice to batch all of the citations supporting a sentence into one string-cite.

his prescribed course of treatment "suggest[ed] that his mental symptoms may not have been as serious as alleged." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Mata argues that the reason he didn't follow his prescribed treatment plan was because his mental impairments undermined his judgment. But the ALJ could reasonably infer from his behavior and his mother's statement that Mata's symptoms were not as bad as he claimed, such that he reasonably felt no need to properly treat them with medications. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006).

The dissent raises multiple unpersuasive arguments against this conclusion. The dissent claims that Mata's "demonstrated inability to follow a regular treatment regime" does not "conflict with [Mata's] testimony that he has been unable to sustain a job." But the ALJ didn't find that Mata was either *unable* to follow his treatment regime or that he was *unable* to sustain a job. The ALJ instead found that Mata was "*unwilling*[] to comply with his treatment plan" and found that Mata's work history was due to something other than his medical condition. Nor did the ALJ—as the dissent claims—indulge in "speculation" in rationally inferring that Mata's limited work experience, which predated when he alleges his condition required he exit the workforce, was "related to other factors than medical impairments." *See Thomas*, 278 F.3d at 959 (noting an "extremely poor work history" as a "specific, clear and

7

convincing reason[] for discounting" the claimant's testimony).[2]

The ALJ's findings on Mata's work history and his failure to follow his treatment plan are supported by substantial evidence. And an unwillingness to comply with a treatment plan and an unwillingness to work are specific, clear, and convincing reasons for discounting subjective pain testimony. *See Thomas*, 278 F.3d at 959; *Fair*, 885 F.2d at 603.

*Second*, the ALJ gave specific, clear, and convincing reasons for discounting or incorporating the medical opinions that concluded Mata had marked or severe limitations. The ALJ permissibly discounted Nurse Kass's opinion because it consisted of unexplained checkboxes, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (citation omitted)), and because Kass had only been treating Mata for a short time, 20 C.F.R. § 416.927(c)(2)(i); *Smartt*, 53 F.4th at 495. The ALJ permissibly discounted Dr. Olmer's opinion and Dr. Carstens's opinion, which simply concurred in Olmer's opinion with minimal additional explanation. The opinions also

---

[2] The dissent's attempt to distinguish *Thomas v. Barnhart* from this case is unavailing. *Thomas* indicates that an ALJ may weigh a claimant's work history in assessing credibility, a point well-established in our case law. *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015) (seeing no error in the ALJ relying on "limited work history" to "discount[] the credibility of [the claimant's] testimony about the severity and intensity of her symptoms"); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (listing "work record" as one factor an ALJ may weigh in "reaching a credibility determination"); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), *as amended on reh'g* (Sept. 17, 1997). That's what the ALJ did here.

8

consisted of unexplained checked boxes, *see Crane*, 76 F.3d at 253, and were based on an examination of Mata when Mata was regularly smoking marijuana twice a day and occasionally drinking alcohol, sometimes at severe levels. In relying on this latter factor to discount certain opinions, the ALJ did not—as Mata and the dissent insist—attribute Mata's impairments to marijuana and alcohol, but instead concluded that the substance usage inhibited certain professionals from determining how Mata would present if he followed his medical providers' consistent advice to stop using marijuana and alcohol.

Finally, the ALJ gave specific reasons, supported by the record, for discounting Dr. Genthe's opinion and Dr. Mitchell's opinion, which again simply concurred in Genthe's opinion with minimal additional explanation. These opinions also consisted of unexplained checked boxes and were issued when Mata was regularly using marijuana and occasionally alcohol.[3] Additionally, the opinions were formed without the review of any records, leaving them entirely dependent on

---

[3] The dissent contends that the ALJ should have developed the record to determine whether Mata's limitations were due to substance use or Mata's mental impairments. Not only is this an argument Mata does not raise, it is unfounded. "Given that the ALJ had years of [Mata's] mental health records and multiple opinions from non-examining psychiatrists to inform [the ALJ's] decision," the duty to develop the record further "was not triggered." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (concluding the ALJ "did not have a duty to recontact the doctors" when the ALJ, "with support in the record, found the evidence adequate to make a determination regarding [the claimant's] disability").

an examination of Mata, whom the ALJ found to not be credible. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Nor did the ALJ err in incorporating the marked and moderate limitations that Dr. Metoyer ascribed to Mata. The ALJ "adequately capture[d]" these limitations by restricting him to jobs consisting of simple tasks, that do not require him to work closely with others, and "with no more than occasional changes in the work environment." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). The dissent criticizes the ALJ for "fail[ing] to consider the unique difficulties that Mata might encounter in the workplace." The dissent's criticism lacks merit in light of the fact that the ALJ specifically incorporated those limitations and restricted him to jobs that do not require him to work closely with others.

*Third*, the ALJ gave specific reasons, supported by substantial evidence, for giving limited weight to the lay statements of Mata's mother. The ALJ explained that "some of her observations" were inconsistent with Mata's "rather normal presentation at some appointments and mental status examinations, and the statements of improvement when the claimant is complying with his treatment plan." *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (noting that an ALJ must provide "germane" reasons to discount lay witnesses (quotation omitted)). The dissent notes some of the symptoms that Mata's mother reported were consistent with other portions of the record. But the ALJ discounted only those

10

"observations [that] are not consistent with the evidence [in] the record." And to the extent that the dissent believes that the mother's statements were universally consistent with the other evidence in the record, that's inaccurate.

## CONCLUSION

In sum, the ALJ's step-five determination that Mata can perform jobs in the national economy is free from harmful error and supported by substantial evidence. For the reasons outlined above, we **AFFIRM** the district court and **DENY** Mata's request for an immediate award of disability benefits.

*Mata v. Kijakazi*, No. 22-35482

**Paez, J.**, dissenting:

I respectfully dissent.  The ALJ rejected Mata's testimony, six medical opinions, and lay witness testimony for reasons that were legally insufficient and inconsistent with our caselaw on psychiatric disabilities.  I would therefore reverse the district court's judgment and remand this case to the agency for further proceedings.

1.  *Mata's testimony.*  In the ALJ's first decision denying Mata's application on June 28, 2017, he found that Mata had the severe impairment of schizophrenia, among several others.  On remand from the district court, in his April 26, 2021 decision, the same ALJ removed schizophrenia as a severe impairment and limited Mata's severe impairments to depression, anxiety, and substance abuse disorder. The ALJ described Mata's longstanding schizophrenia diagnosis as "allegations" and "a constellation of mental symptoms."

This shift underlies the ALJ's improper view of Mata's schizophrenic symptoms as undermining his testimony rather than supporting a finding of disability.  Although the ALJ stated that he would consider all of Mata's functional limitations regardless of whether they were listed as severe at Step 2, removing Mata's most severe condition led the ALJ to arbitrarily attribute Mata's psychotic symptoms to other causes.  He interpreted Mata's statements that he was healthy

1

and did not need treatment, for example, as discrepancies with the record rather than as delusional thinking noted throughout his medical history due to schizophrenia.

The ALJ also discounted Mata's testimony due to the limited improvement he experienced during periods when he was medicated. Schizophrenia is a chronic illness that has no cure. Because symptoms of mental health impairments "wax and wane," isolated periods of improvement or stability do not disprove the level of impairment. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *accord id.* ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). We have made clear that when "a person who suffers from severe panic attacks, anxiety, and depression makes some improvement[, that] does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

Substantial evidence does not support the ALJ's finding that the partial abatement of Mata's symptoms when he takes medication undermines his credibility. The evidence that Mata's psychiatric limitations persisted overwhelms notations in the record such as his display of "normal affect" at certain medical appointments. Many of the record citations that the ALJ cites as support for the

2

finding that Mata displayed sustained improvement are redundant, do not support the propositions for which they are cited, or both.[1]  The majority accepts at face value the ALJ's selective consideration of the record, but we "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ryan v. Comm'r Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation omitted).

Nor does Mata's demonstrated inability to follow a regular treatment regime conflict with his testimony that he has been unable to sustain a job.  "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Mata's belief that he sometimes does not need medication is a hallmark feature of his diagnoses that is consistent with the objective medical evidence.  His failure to maintain his medication regime is also consistent with the evidence of his inability to remember and follow instructions or care for himself.

_____

[1] To note a few examples from the medical records that the ALJ and the majority cite as evidence of Mata's stabilization: the January 2016 record states that Mata had inconsistent recent or remote memory, a vague, circumstantial thought process, anxious mood and affect, and appeared unkempt.  The September 2017 record describes Mata as having inconsistent recent or remote memory, vague thought processes, and a flat affect.  The September 2019 record states that he displayed a constricted affect, slow or monosyllabic responses, was guarded or paranoid, and had impaired insight and judgment.  The November 2020 record notes his inappropriate mood and affect, poor insight, poor judgment, and appearance as both older than his stated age and chronically ill.

The majority also sanctions the ALJ's speculation that Mata's failure to sustain work in the past was due to "lack of motivation" rather than limitations stemming from his struggle with debilitating mental illness, which has included periods of homelessness and involuntary hospitalization. The ALJ and majority rely on *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002), to support the assertion that Mata's lack of work history undermines his testimony. This misapplication of *Thomas* exemplifies the same fundamental error that underlies the ALJ's decision: the failure to view facts in the context of the whole record of Mata's longstanding psychiatric impairments.

The plaintiff in *Thomas* suffered primarily from physical impairments, and there was evidence that she repeatedly lied to medical providers by exaggerating the severity of her physical condition and denying substance use. *Id.* at 959. Under those circumstances, a scant work history reasonably undermined her symptom testimony. Mata's principal impairments are psychiatric, and his resulting delusions and general poor insight into his condition mean that he is often inaccurate about his limitations. There is no evidence of malingering or misrepresentation that suggests a desire to avoid work. Nor is there any evidence that suggests Mata attempted to deceive providers, including about substance use. The evidence of Mata's longstanding, severe psychiatric impairment belies the ALJ's interpretation that he simply has been unmotivated for his entire life. The

4

ALJ impermissibly cherry-picked the record for indicia of improvement, discounted every source that complicated that arbitrary reading, and failed to consider the unique difficulties that Mata might encounter in the workplace. *See* SSR 85-16, at *3 (requiring adjudicators to consider the particular difficulties that mentally ill individuals might have in the workplace). The record shows a clear picture of Mata's inability to function independently or ever sustain employment due to his longstanding, debilitating psychiatric impairments.

The ALJ's failure to apply our caselaw on the complex nature of psychiatric illness pervades his analysis and resulted in an irrational interpretation of the evidence. The majority disposition suffers from the same error, as seen in its granular focus on attempting to rationalize isolated facts and citations. Mata's psychiatric conditions explain the supposed inconsistencies that the ALJ identified in the record. Viewing the evidence in the "context of the overall diagnostic picture," *Holohan*, 246 F.3d at 1205, I would hold that the ALJ failed to provide specific, clear, and convincing reasons for giving Mata's testimony less than full weight.

**2.** *Medical opinions.* The ALJ's failure to recognize the context of Mata's schizophrenia also tainted his analysis of the medical evidence. In discounting the opinions of Mata's four treating and examining physicians and two concurring reviewing physicians, the ALJ overstated potential contradictions and ignored

5

evidence that would reconcile them. In addition to this critical error, the ALJ neglected his duty to develop the factual record and to conduct an initial analysis of Mata's disability without considering substance use.

The ALJ rejected the medical opinions of Dr. Olmer and Dr. Genthe in part because he found that it "would be difficult" to know how Mata's substance use contributed to the limitations that they had identified. The ALJ had a duty to develop the record to obtain the necessary information about which limitations the medical sources opined were due to substance use versus Mata's other impairments. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." (internal quotation omitted)). Indeed, the ALJ has a heightened duty to develop the record in cases involving chronic psychiatric illness. *DeLorme v. Sullivan*, 924 F.2d 841, 848 & n.17, 849 (9th Cir. 1991). The majority's attempt to justify the ALJ's abdication of this duty is unpersuasive.

Even if additional information would not have resolved this issue, the ALJ did not follow the required procedures for conducting the drug and alcohol abuse analysis. The ALJ should have completed "the five-step inquiry without attempting to determine the impact of [the claimant's] alcoholism on his other mental impairments. If, and only if, the ALJ found that [he] was disabled under

6

the five-step inquiry, should the ALJ have evaluated whether [he] would still be disabled if he stopped using alcohol." *Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001). The ALJ instead resolved the ambiguity about the impact of Mata's substance use against him without first determining whether he was disabled apart from that factor.

**3.** *Lay witness testimony.* The ALJ incorrectly concluded that Mata's mother's testimony conflicted with other evidence in the record. Substantial evidence, however, does not support the ALJ's decision to reject it. The ALJ does not identify the evidence that Mata's mother's statements supposedly contradict, nor does he acknowledge evidence that contradicts his finding of inconsistency.

Lay witness testimony, especially from family members, has an important role in cases where some symptoms of the claimant's condition are not observable in a clinical setting. In *Regennitter*, we held that an ALJ erred when he did not justify "his expectation that nightmares and panic attacks—intrinsically private, solitary behavior—should be witnessed by strangers" such as physicians. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999). We recognized that Regennitter's mother had crucial insight into "numerous specific symptoms of his mental problems" that doctors could not observe, such as "waking up screaming in the middle of the night." *Id.*

7

Like Regennitter's mother, Mata's mother has insight into his behavior that doctors lack because they only see him briefly in a clinical setting. Presenting with a normal demeanor at a doctor's appointment is not inconsistent with symptoms such as self-isolation, alternation between insomnia and sleeping for long periods, paranoia, and pacing that Mata's mother explains he exhibits at home. Rather, her perspective as a family member and fulltime caretaker is "an important source of information about [his] impairments." *Id.* at 1298; *see* SSR 85-16, at *4 (explaining that family members' statements can "play a vital role" in an "overall assessment of the effects of mental impairment."). Her statements are also consistent with evidence of Mata's limited improvement when on medication. She states that since taking medication, Mata sleeps a lot and does not have problems getting along with people he knows. Indeed, the ALJ does not point to specific evidence in the record that is inconsistent with Mata's mother's testimony.

Although the majority attempts to fill in the gaps for the ALJ, it likewise fails to identify any inconsistency that does not depend on the false equivalency between a medical clinical setting and private home life. Our caselaw does not permit, let alone require, that we disregard the context in which symptoms are observed. Along with Mata's testimony, his mother's account is the only source of insight to his day-to-day behavior rather than isolated instances in a clinical setting. Because the record compels the conclusion that Mata's mother's testimony is

consistent internally and with other evidence, substantial evidence does not support the ALJ's reasons for rejecting it.

For these reasons, I respectfully dissent from the majority's decision and would remand this case to the agency for further proceedings.